Wheeler agt. Cropsey.

5 How. 288–*See* 8 How. 75.

## SUPREME COURT.

### WHEELER agt. CROPSEY.

The horse of a country physician, whose patients reside at too great a distance to visit them on foot, is a " necessary team," and as such is exempt from execution, under the exemption act of 1842.

In determining whether the team is *necessary*, it is entirely immaterial whether the debtor has or has not other means to pay the debt. The exemption does not depend upon the pecuniary ability of the debtor.

The law was intended for the benefit of all persons, no matter what their calling or profession, whose team is necessary to the successful or convenient prosecution of their business.

If the creditor claims the right to seize the property, on the ground that the debt for which the judgment was recovered, accrued before the passing of the act, it rests upon the creditor to show the facts that will take the case out of the exemption.

Where part of the debt accrued before, and part after, the passing of the act, and there has been a payment made, the law applies such payment to the first accruing indebtedness.

In the absence of proof of an express contract, a promise to pay will not be implied till the services have been performed.

*Albany General Term, Feb. 1850. Present, Justices* WATSON,

Wheeler agt. Cropsey.

PARKER and WRIGHT.   Wheeler sued Cropsey before a justice of the peace in the city of Troy, in trespass for taking a horse.  The defendant justified the taking under an execution against Wheeler. The justice gave judgment for the plaintiff and the defendant appealed and the cause was tried in the Troy Mayor's Court in 1847. It appeared on the trial that Wheeler was a householder and had a family for which he provided, residing with him in the town of Brunswick, Rensselaer county; that he was a physician engaged in the practice of his profession, and that his ride extended from three to ten miles from his residence.  That he had been the owner of the horse in question six or seven years and used it in visiting his patients and owned no other horse.   That in March 1844 the horse was levied on and sold by Cropsey, as a constable, under an execution in favor of Henry McCann against Wheeler.   The execution was issued on a judgment recovered on 17th February 1844, for about $27 for the services of McCann's wife in the family of Wheeler.  It appeared that she commenced working for Wheeler about 1st March 1842, and continued in his service over a year.   It did not appear that she had worked under any express contract; but it did appear that on the trial between McCann and Wheeler, the jury allowed the defendant about $10, money he had paid towards her services.  The horse was proved to be worth from $40 to $60.

The Recorder charged that it was the intention of the legislature to extend the benefits of the exemption act, passed April 11, 1842, to teamsters and laborers and not to professional men, and that the horse in question was not exempt under that act, to which the counsel for Wheeler excepted.

The Recorder also charged that inasmuch as Mrs. McCann commenced work before the passage of the act, and Wheeler had not shown a contract made after the passage of that act, there was proof of a contract made before the passage of the act, and that the levy and sale were therefore warranted by law even if the horse had been a necessary team within the meaning of the act; to all of which the counsel for Wheeler also excepted.

37

Wheeler agt. Cropsey.

The counsel for Wheeler requested the Recorder to charge that the said horse was exempt from execution.

That for the purpose of determining whether the judgment in favor of McCann against Wheeler was for an indebtedness accruing before the passage of the act, the jury had a right to consider the set off as applied to the payment of the first wages accruing unless it was affirmatively shown that it was not so applied.

That to avail himself of the defence, Cropsey was bound to show affirmatively and positively that the judgment was for a debt which accrued before the passage of the act, or that it was for services rendered under an express contract made before its passage. That, as the facts appeared, the recovery by McCann against Wheeler could only have been had on an implied promise to pay for the services and that the law did not imply a promise until after the rendition of the services. The Recorder refused to charge as requested on the several propositions submitted and the counsel for Wheeler excepted.

The Recorder then directed a verdict in favor of Cropsey, and the counsel for Wheeler excepted and brought a writ of error.

H. Z. HAYNER, *for Plaintiff in Error.*

J. NEIL, *for Defendant in Error.*

By the Court, PARKER, J.—The act in question, passed April 11, 1842, in addition to the articles previously exempt from sale under execution, exempted "necessary household furniture, and working tools and team, owned by any person being a householder, or having a family for which he provides, to the value of not exceeding one hundred and fifty dollars." The first question presented is, whether this exemption of a team extends to the only horse of a physician engaged in a country practice of several miles in extent, where the horse is in daily use in visiting his patients. If we come to the conclusion that the horse was not within the exemption, it will not be necessary to examine the other questions discussed on the argument. But if the horse was exempt under the act of 1842, we must go further, and see whether

Wheeler agt. Cropsey.

the debt of McCann was contracted before the passage of that act; for it seems now to be settled that that act does not affect debts contracted before its passage (Quackenboss vs. Danks, 1 *Denio*, 128; 3 *id.* 594; Matthewson vs. Weller, *id.* 52; 1 *Comst. R.* 129). Though against the inclinations of our own judgments, we so held, in accordance with these decisions, in Vedder vs. Aldenbrach, decided March 1848.

I see nothing in the language of the statute designed to limit the exemption, of a necessary team, to teamsters and laborers; on the contrary the exemption is expressly given to *any* person being a householder or having a family for which he provides. Wheeler was within this description, and the question is therefore, was it a *necessary* team? That is to say, was it necessary to the carrying on of his business—to the exercise of his means of obtaining a livelihood? That was a question of fact, that I think should have been submitted to the jury. If it was his only team, and if it was required for the successful or convenient prosecution of his professional business, then, I think it was a *necessary* team, within the meaning of the act. I see no reason why a country physician, whose patients reside at too great a distance to visit them on foot, or any other professional man whose business requires the use of a team, is not protected in the exemption, as well as a teamster or laborer. The restricted application given to the exemption in the court below, would exclude small farmers, as well as others, from the benefit of the law. I think no such limitation was contemplated. The policy of the law was broad and liberal. It favors no invidious distinctions. It was intended for the benefit of all persons, no matter what their calling or profession, whose property comes within the scope of its provisions.

In determining whether the team was *necessary*, it is entirely immaterial whether the debtor had or had not other ample means to pay the debt. If the fact that Wheeler had money enough to pay the debt is to control this question, then a teamster's horses and a mechanic's working tools are not to be exempt if the owner has money enough in his pocket to pay the judgment. This can

not be the test. I think the team of every teamster and of every other man where it is necessary to his use, is exempt, although the owner may be worth thousands of dollars in money or in other property. The exemption is not made by the statute to depend on the pecuniary ability of the debtor. Where the debtor has money or other property, the law has provided ample remedies for collection, without resorting to exempted property for the satisfaction of the debt.

The jury were therefore at liberty to find the horse within the exemption, and that he was not liable to execution, unless the debt for which the judgment was recovered, accrued before the passing of the act. It rested on Cropsey to show this affirmatively to justify his levy and sale.

I find nothing in the evidence indicating that all the services were rendered under one contract, and that that contract was made before the passage of the act. The evidence shows nothing but the rendering of the services. A hiring is of course implied, but it may be a hiring from week to week. In the absence of proof of an express contract, a promise to pay is not implied until the services have been performed. There was nothing to prevent McCann suing for the services at the end of every week, and he had no right, by including in one suit, the services rendered both before and after the passage of the act, to have the debt, accruing afterwards paid out of the property which the statute exempts.

But the evidence shows that in the suit between McCann and Wheeler a credit was proved and allowed to an amount greater than the indebtedness which accrued before the passage of the act. I think the law applies such payment to the first accruing indebtedness. No part of the judgment recovered by McCann was therefore for services rendered before the passage of the exemption act.

The peculiar character of the demand against Wheeler; his professional calling and the strong moral and legal obligation resting on him to pay the debt, are well calculated to excite our sympathies and mislead our judgments. But the law must not

bend to the hardship of a particular case. Such a misapplication would distort the beauty of its proportions and impair its value. The law can only operate justly when it operates equally.

I think the judgment of the Mayor's Court should be reversed with costs and a venire de novo awarded.

5 How. 293–Not concurred in, 5 How. 463; 6 Id. 89, 92. *Contra,* 7 Id. 17.